OPINION OF THE COURT
Per Curiam.
Order dated March 13, 2000, insofar as appealed from, reversed with $10 costs, petitioner’s motion for summary judgment on the holdover petition is granted, and respondents’ cross motion for leave to amend their answers is denied.
Appeal from order entered February 9, 2000 dismissed, without costs, as nonappealable. Petitioner is not aggrieved by the order overruling the traverse (CPLR 5511) and its disagreement with certain dicta in the order does not furnish a basis to take an appeal (Pennsylvania Gen. Ins. Co. v Austin Powder Co., 68 NY2d 465, 472-473).
Appeal from order entered February 4, 2000 dismissed, without costs, as nonappealable. No appeal lies from an order denying resettlement of an order or judgment (Murphy v Wack, 186 AD2d 427).
Petitioner seeks possession of the building at 605 East 9th Street, Manhattan, previously the site of a public school, which *613 was leased by the City of New York in 1984 to respondent El Bohio Public Development Corporation (El Bohio) for “nonprofit community services involving neighborhood preservation and assistance to local residents.” The lease was “short term,” and respondent agreed to promptly vacate upon 30 days’ written notice. Petitioner, a private landlord, purchased the property at public auction in 1999. The deed provided that use of the property was “restricted and limited to a ‘community facility use’ as such use is defined in the New York City Zoning Resolution,” and that the transfer was subject to “the rights, if any, of tenants and persons in possession, if any.”
Upon acquiring title, petitioner served a 30-day notice terminating the tenancy of El Bohio and several individual occupants, and commenced eviction proceedings upon a holdover petition alleging that the premises had been rented for “business/commercial purposes” and that respondents were holding over beyond the expiration of the term. In response, El Bohio asserted, inter alia, that petitioner’s notice of termination and petition were defective because no reason to terminate its tenancy was set forth. The individual respondents alleged, inter alia, that they were residential occupants entitled to the protections of article 7-C of the Multiple Dwelling Law.
Civil Court denied petitioner’s motion for summary judgment, reasoning that the deed restriction as to use of the premises might be “sufficient to cast petitioner into a joint endeavor with municipal government,” thereby implicating a due process requirement of good cause for termination of El Bohio’s tenancy. The court further found issues of fact with respect to the residential occupancies of the individual respondents. On a subsequent reargument motion, of which we may take judicial notice (see, Marben Realty Co. v Sweeney, 87 AD2d 561, 562), Civil Court modified its original ruling by holding (on constraint) that El Bohio, as a commercial tenant, “had no constitutional rights to good cause for eviction or to advance notice of that cause.” However, the court adhered to its decision to deny summary judgment and granted respondents’ dismissal motion unless petitioner served an amended petition alleging its continuing compliance with the use restriction (9th & 10th St. v Adopt-A-Building, NYLJ, Nov. 22, 2000, at 31, col 3 [Civ Ct, NY County]).
We reverse and grant summary judgment on the petition as against all respondents. The City is not entwined in this property by virtue of the deed restriction for community facility use. It is not seriously disputed that, whatever its history, *614 the premises does not presently receive government assistance and is not under government supervision. Like any private landlord, petitioner’s use of the property is necessarily subject to zoning regulations and other municipal orders. But a generalized “community facility” use, without more, does not connote significant governmental participation of the type requiring a landlord to plead and prove good cause as a precondition to regaining possession at the end of a tenancy. Nor does any limitation upon petitioner’s use bestow the right to continued occupancy upon El Bohio, or any other unregulated tenant, whose term has expired by operation of law.
Moreover, commercial or nonresidential tenants do not have a constitutionally protected property interest which entitles them to continue in possession except for good cause shown, or which precludes eviction proceedings on the sole ground that their leases have expired (I.S.J. Mgt. Corp. v Delancy Clothing, 152 Misc 2d 13; Ramirez v Luna, NYLJ, July 10, 1991, at 21, col 3 [App Term, 1st Dept]). This case is therefore distinguishable from the line of cases holding that housing cooperatives operating under the aegis of the City must furnish good cause for the removal of their residential tenants (see, e.g., 512 E. 11th St. HDFC v Grimmet, 181 AD2d 488). We would add that any requirement of good cause is particularly inapposite where respondent originally entered into possession under a “short term” lease and agreed to “promptly vacate” on 30 days’ notice. While it is true that respondent enjoyed the benefit of a prolonged month-to-month tenancy, the nature of its occupancy was clear from the outset.
The petition adequately sets forth the facts upon which the proceeding is based and is in compliance with RPAPL 741. The statute does not require that petitioner plead and prove compliance with the use restriction in the deed or its intent to comply in the future (cf., MSG Pomp Corp. v Doe, 185 AD2d 798). Issues as to the identity of prospective new tenants for the premises or petitioner’s intentions with respect to use of the space are outside the scope of this proceeding.
With respect to the four individual respondents, we discern no legal or factual basis for them to continue in occupancy as protected occupants under article 7-C of the Multiple Dwelling Law. They are no more than licensees of El Bohio who have been permitted to occupy various rooms in the building in exchange for services to that entity — an entity which, we have determined, no longer retains possessory rights. There is no showing that the space they inhabit has *615 been “converted” from commercial or manufacturing use to residential use in any meaningful sense; to the contrary, respondents’ own affidavits demonstrate that the rooms lack basic residential amenities such as kitchens or toilets (see, Franmar Infants Wear v Rios, 143 Misc 2d 562; Loft Realty Co. v Aky Hat Corp., 131 Misc 2d 541; cf., Kaufman v American Electrofax Corp., 102 AD2d 140 [approximately 50% of space converted for residential occupancy]). “It is then not enough to show residential use alone. The showing of residential use must be accompanied by a showing that the formerly commercial premises, the domestic use of which is claimed, physically reflect that use, i.e., that the premises have been converted, at least in part, into a dwelling” (Anthony v New York City Loft Bd., 122 AD2d 725, 727). At most, respondents have established occupancy, but not occupancy of such a character that would independently qualify them for regulatory protection upon the termination of the commercial tenant’s interest.
In light of our disposition, petitioner’s remaining points have been rendered moot.
McCooe, J. P., Davis and Suarez, JJ., concur.